IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROBERT J.,<br><br>                    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 4:19-cv-00009-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Robert J.'s appeal from the decision of the Social Security Administration denying his application for disability and disability insurance benefits. The Court held oral arguments on October 1, 2019. Having considered the arguments of the parties, reviewed the record and relevant case law, and being otherwise fully informed, the Court will reverse and remand the administrative ruling.

## I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II. BACKGROUND

A.   PROCEDURAL HISTORY

On June 10, 2015, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on March 30, 2009.[7] The claim was denied initially and upon reconsideration.[8] Plaintiff then requested a hearing before an ALJ, which was held on October 31, 2017.[9] The ALJ issued a decision on December 29, 2017, finding that Plaintiff was not disabled.[10] The Appeals Council denied Plaintiff's request for review on September 26, 2018,[11] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[12]

---

[4] *Richardson*, 402 U.S. at 390.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] R. at 139–42.

[8] *Id.* at 64, 74.

[9] *Id.* at 32–53.

[10] *Id.* at 16–31.

[11] *Id.* at 1–7.

[12] 20 C.F.R. § 422.210(a).

On January 23, 2019, Plaintiff filed his Complaint in this case.[13] The Commissioner filed his Answer and the administrative record on April 22, 2019.[14] On April 30, 2019, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15] Consequently, this case was assigned to Magistrate Judge Kohler pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.[16]

Plaintiff filed his Opening Brief on April 16, 2019.[17] Defendant filed his Answer Brief on May 6, 2019.[18] Plaintiff filed his Reply Brief on May 23, 2019.[19]

B.  MEDICAL HISTORY

On March 19, 2009, Plaintiff presented in "deep distress" and "extreme anxiety."[20] Plaintiff reported that he felt he was having panic attacks and complained of left shoulder pain.[21] Plaintiff was prescribed Ambien and Prozac.[22]

---

[13] Docket No. 3.
[14] Docket Nos. 8, 9.
[15] Docket No. 13.
[16] Docket No. 7.
[17] Docket No. 17.
[18] Docket No. 20.
[19] Docket No. 21.
[20] R. at 296.
[21] *Id.*
[22] *Id.* at 294.

On May 22, 2009, Plaintiff stated that he was feeling less anxious.[23] He continued on Ambien and Prozac.[24] He was also prescribed Lortab and Valium.[25]

On August 4, 2011, Plaintiff was seen by King Udall, M.D.[26] Plaintiff stated that he tolerated the Prozac well.[27] He was given a trial sample of a medication to help with sleep and was provided medication for depression and anxiety.[28]

On October 26, 2011, Plaintiff complained of lower back pain.[29] Dr. Udall prescribed Lortab to help with Plaintiff's back pain.[30]

On March 28, 2012, Plaintiff again complained of depression, anxiety, sleep problems, and chronic back pain.[31] Plaintiff was prescribed Cymbalta, Valium, and Lortab.[32]

On June 13, 2012, Dr. Udall discontinued the use of Cymbalta due to urinary obstructive symptoms.[33] Plaintiff was continued on Valium and Lortab.[34] Plaintiff also noted that he planned to get an MRI in the next few months when his income might increase.[35]

---

[23] *Id.* at 284.
[24] *Id.*
[25] *Id.*
[26] *Id.* at 281.
[27] *Id.*
[28] *Id.*
[29] *Id.* at 278.
[30] *Id.*
[31] *Id.* at 270.
[32] *Id.*
[33] *Id.* at 265.
[34] *Id.*
[35] *Id.*

4

On September 13, 2012, Plaintiff was again prescribed Lortab for back pain.[36] Plaintiff noted that he still could not afford an MRI.[37] Plaintiff continued on Valium and Trazodone.[38] However, his depression was stable off of medication.[39]

On April 8, 2013, Plaintiff was again seen by Dr. Udall. It was noted that Plaintiff was taking Lortab for back pain and could not afford an MRI.[40]

On October 15, 2013, Dr. Udall reported that Plaintiff's depression was stable.[41] Plaintiff reported that he was going to be gone for an extended trip.[42] Again, it was noted that Plaintiff was taking Lortab twice daily for his back pain.[43]

On March 17, 2014, Plaintiff reported to Dr. Udall complaining of chronic anxiety.[44] Dr. Udall also noted that Plaintiff was taking Lortab for back pain.[45]

Plaintiff was seen by Dr. Udall on November 18, 2014. Dr. Udall noted that Plaintiff's condition had deteriorated due to his anxiety.[46]

---

[36] *Id.* at 263.
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at 259.
[41] *Id.* at 255.
[42] *Id.*
[43] *Id.*
[44] *Id.* at 251.
[45] *Id.*
[46] *Id.* at 246.

A treatment note from February 17, 2015, reflected that Plaintiff's anxiety was not improving and that he still had sleep problems.[47] It was also noted that Plaintiff was taking Lortab for his chronic back pain.[48]

On May 15, 2015, Plaintiff saw Dr. Udall.[49] Plaintiff reported anxiety and depression, though his anxiety improved with Valium.[50] Plaintiff also complained of sleep problems and Dr. Udall noted that Plaintiff had chronic back pain for which he used Lortab up to twice a day.[51]

On August 4, 2015, Plaintiff was seen by Dr. Udall. The treatment notes reflect that Plaintiff was treated for depression and anxiety.[52] Dr. Udall noted that Plaintiff's anxiety improved with Valium.[53] It was further noted that Plaintiff was taking Lortab to treat his back pain, though his back pain had improved with weight loss.[54] Additionally, Plaintiff complained that he was still having sleep problems.[55]

On August 6, 2015, Dr. Udall completed a mental residual functional capacity assessment and a physician's assessment of physical activities.[56] Dr. Udall opined that Plaintiff's low back and cervical spine impairments limited him to sedentary work.[57] Dr. Udall stated that Plaintiff

---

[47] *Id.* at 242.
[48] *Id.*
[49] *Id.* at 238.
[50] *Id.*
[51] *Id.*
[52] *Id.* at 230.
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.* at 217–23.
[57] *Id.* at 217.

6

was unable to stand or walk for extended distances without significant pain and was limited in his ability to lift.[58] Dr. Udall further opined that Plaintiff's depression and anxiety met Listings 12.04 and 12.06.[59]

An MRI was conducted on September 30, 2015, after the relevant time period. The MRI revealed advanced degenerative disc disease in conjunction with asymmetric face arthropathy at the lumbar sacral junction with resultant asymmetric neuroforaminal narrowing.[60]

Plaintiff began treatment at Southwest Spine & Pain Center on July 6, 2016. Plaintiff reported with severe lower back pain.[61] Plaintiff stated that pain was persistent and gradually worsening.[62] Plaintiff stated that the pain interfered with various daily activities, including work.[63]

Plaintiff was again seen at Southwest Spine & Pain Center on August 1, 2016. Plaintiff reported that his pain was moderately controlled by taking Oxycodone.[64] However, Plaintiff stated that he twisted his back three days before and his pain was worse.[65] Plaintiff's prescribed medications were continued.[66]

---

[58] *Id.* at 222.
[59] *Id.* at 220–21.
[60] *Id.* at 306.
[61] *Id.* at 337.
[62] *Id.*
[63] *Id.*
[64] *Id.* at 325.
[65] *Id.* at 320.
[66] *Id.* at 327.

At some point, Plaintiff began to be treated by Fernando Thadepalli, M.D. Dr. Thadepalli prescribed pain medication for Plaintiff's back pain.[67] On October 20, 2016, Plaintiff was continued on Oxycodone for his back pain.[68] Plaintiff's dosage of Oxycodone was increased on January 18, 2017.[69] By April 13, 2017, Plaintiff reported overall improved pain and improved quality of life.[70] However, Plaintiff reported increased pain by June 14, 2017, and limited his abilities to perform activities of daily living.[71] Some improvement was noted by September 8, 2017.[72]

On September 12, 2017, Dr. Thadepalli provided a Treating Source Statement of Physical Limitations.[73] Dr. Thadepalli indicated that Plaintiff had advanced degenerative disc disease.[74] Dr. Thadepalli opined that could lift up to 10 pounds, stand/walk less than 2 hours in an 8 hour day, and sit less than 2 hours.[75] Dr. Thadepalli opined that Plaintiff's symptoms would interfere with attention and concentration 20% of the time or more.[76] Dr. Thadepalli further opined that Plaintiff would be off task 20% or more of the time, would miss 4 or more days of work due to his impairments, and would be significantly less efficient than an average worker.[77] Dr.

---

[67] *Id.* at 369.
[68] *Id.* at 366.
[69] *Id.* at 358.
[70] *Id.* at 356.
[71] *Id.* at 355.
[72] *Id.* at 349.
[73] *Id.* at 373–74.
[74] *Id.* at 373.
[75] *Id.*
[76] *Id.*
[77] *Id.* at 374.

8

Thadepalli opined that Plaintiff was unable to work on a full-time basis because of his medical conditions.[78]

The record also contains an undated letter from one of Plaintiff's friends. She stated that she has known Plaintiff since 2014, and Plaintiff informed her that he had chronic shoulder and back pain.[79] The individual reflected that Plaintiff needed pain medication on a daily basis and, based on her observations, his condition appeared to be worsening.[80]

C.   HEARING TESTIMONY

At the hearing, Plaintiff testified that he worked at a laundry supply company from 1971 to 2009.[81] Plaintiff stated that he began having physical and mental health issues that interfered with his work beginning in the late 1980s and, at a point, these issues became so severe that he was unable to continue working.[82] Plaintiff testified that he suffers from back pain and requires the use of a cane.[83] Plaintiff also has shoulder pain on his right side.[84]

Plaintiff stated that he takes pain medication in the morning and then does not leave the house for several hours to avoid any potential side-effects.[85] Plaintiff testified that he is able to leave the house to go shopping and walk his dog.[86] When he walks, he is able to do so for 20 to

---

[78] *Id.*
[79] *Id.* at 211.
[80] *Id.*
[81] *Id.* at 36, 38.
[82] *Id.* at 38.
[83] *Id.* at 41.
[84] *Id.*
[85] *Id.* at 45.
[86] *Id.*

30 minutes without stopping.[87] However, he usually does not go out for more than three hours and when he returns, he usually sits down or goes to bed.[88]

Plaintiff further testified that he was receiving treatment for depression and anxiety.[89] Plaintiff stated that he takes medication, which helps "level [him] off."[90] However, his symptoms interfere with his ability to do things on a daily basis.[91] He also takes medication to help him sleep.[92]

D.   THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of March 30, 2009, through his date last insured of December 31, 2014.[93] At step two, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments and, therefore, he was not disabled.[94]

### III.  DISCUSSION

Plaintiff raises the following issues in his brief: (1) whether the ALJ erred in finding at step two that Plaintiff had no severe impairments; and (2) whether the ALJ erred in his evaluation of the medical opinion evidence.

---

[87] *Id.* at 47.
[88] *Id.* at 45–46.
[89] *Id.* at 48.
[90] *Id.*
[91] *Id.* at 50–51.
[92] *Id.* at 49–50.
[93] *Id.* at 21.
[94] *Id.*

A. STEP TWO

At step two of the sequential evaluation, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."[95] A claimant must make only a de minimis showing for his claim to advance beyond step two of the analysis.[96] However, the "a showing of the mere presence of a condition is not sufficient."[97] Thus, "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities . . . the impairments do not prevent the claimant from engaging in substantial gainful activity."[98] "If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits."[99]

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.
>
> . . . .
>
> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work

---

[95] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[96] *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).

[97] *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008).

[98] *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[99] *Id.*

activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.[100]

The parties focus their arguments on the results of an MRI conducted in September 2015, which showed advanced degenerative disc disease. The ALJ noted the MRI in his decision and stated that it was performed "nearly nine months after the date last insured."[101] The ALJ also noted that, after the MRI was conducted, Plaintiff began participating in treatment, but that "all such treatment was rendered after the date last insured."[102]

"Under title II, a period of disability cannot begin after a worker's disability insured status has expired."[103] However, just because the MRI was conducted after Plaintiff's insured status expired, does not necessarily mean it should not be considered. This is especially true where the evidence relates to Plaintiff's condition during the relevant period.[104]

Here, the ALJ noted the existence of the MRI, but did little to discuss how that imaging influenced, if at all, his analysis at Step Two. It seems highly unlikely that Plaintiff developed advanced degenerative disc disease in the nine month period after the date last insured. The MRI supports Plaintiff's prior complaints of pain and treatment history during the relevant period and should have been considered and discussed by the ALJ. This is especially true where, as here,

---

[100] SSR 85-28, 1985 WL 56856, at *3–4 (Jan. 1, 1985).

[101] R. at 24.

[102] *Id.*

[103] SSR 83-10, 1983 WL 31251, at *8 (Jan. 1, 1983).

[104] *See Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (examining medical evidence created after the date last insured that related to the nature and severity of claimant's condition during the relevant time period).

there was a lack of imaging studies during the relevant period. Therefore, remand is required so that the ALJ may consider all of the evidence in the record using the proper legal standard.

Plaintiff further argues that the ALJ erred by not considering the side-effects of the medications Plaintiff was taking, as required by SSR 16-3P.[105] Because remand is required, the ALJ will have the opportunity to conduct this analysis.

A more difficult question is presented as to the ALJ's determination that Plaintiff's anxiety and depression were not severe. As set forth above, Plaintiff repeatedly complained of anxiety and depression. He was provided medication for these issues and sought no further treatment. Plaintiff's mental health treatment improved on occasion, to the point where Plaintiff was doing well off his depression medication. At other times, his condition deteriorated. However, a review of the evidence supports the ALJ's determination that Plaintiff's mental impairments did not significantly limit his ability to perform work-related activities.

B.  MEDICAL OPINION EVIDENCE

An ALJ must review every medical opinion.[106] In reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[107] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[108] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is

---

[105] SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016).
[106] 20 C.F.R. § 404.1527(c).
[107] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).
[108] *Id.*

consistent with other substantial evidence in the record.[109] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[110]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[111] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[112]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[113] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[114]

Plaintiff takes issue with the ALJ's treatment of Dr. King Udall. The ALJ gave Dr. Udall's opinions little weight. The ALJ stated that since Dr. Udall's opinions were rendered eight months after the date last insured, they "likely reflected the claimant's functional status after the

---

[109] *Id.*

[110] *Id.*

[111] *Id.*

[112] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[113] *Id.*

[114] *Id.*

relevant period."[115] The ALJ went on to note that Dr. Udall's opinions were not consistent with the record evidence, even his own treatment notes.

Plaintiff takes issue with the ALJ's rejection of Dr. Udall's opinion because it was rendered after the date last insured. For the reasons set forth above, this was error to the extent those opinions relate to the relevant time period. However, this was not the only reason the ALJ gave Dr. Udall's opinions little weight. The ALJ found that Dr. Udall's opinions were not supported by his treatment notes and were not consistent with the other evidence in the record. These are good reasons, supported by substantial evidence, allowing the ALJ to give Dr. Udall's opinions little weight. Therefore, there was no error in the ALJ's treatment of Dr. Udall's opinions. The ALJ remains free, however, to reevaluate Dr. Udall's opinions on remand.

## IV. CONCLUSION

It is therefore

ORDERED that the ALJ's decision is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the purposes of conducting additional proceedings as set forth herein.

DATED this 3rd day of October, 2019.

BY THE COURT:

Paul Kohler
United States Magistrate Judge

---

[115] R. at 24.